Gonzalo BARRIENTOS,
et al., Plaintiffs,

v.

State of TEXAS, et al., Defendants.

No. Civ.A. L–03–113.

United States District Court,
S.D. Texas, Laredo Division.

Sept. 12, 2003.

C.M. Zaffirini, Sr., Attorney at Law, Laredo, TX, Max Renea Hicks, Attorney at Law, David R. Richards, Attorney at Law, Austin, TX, J. Gerald Hebert, Attorney at Law, Alexandria, VA, Paul M. Smith, Jenner and Block, Washington, DC, for Plaintiffs.

Edward Donald Burbach, Dep Atty Gen for Litigation, David C. Mattax, Barry Ross McBee, First Assistant Atty Gen, Cassandra Burke Robertson, Assistant Solicitor Gen, Rafael Edward Cruz, Solicitor Gen, Office of the Atty Gen, Austin, TX, for Defendants.

Before HIGGINBOTHAM, Circuit Judge, KAZEN, Chief District Judge, and ROSENTHAL, District Judge.

## MEMORANDUM AND ORDER

HIGGINBOTHAM, Circuit Judge.

This action was brought by eleven Texas State Senators against: the State of Texas, its Governor, and Lieutenant Governor, seeking declaratory and injunctive relief under §§ 2 and 5 of the Voting Rights Act ("the Act"). The complaint primarily attacks two events: first, the decision by the state legislature to consider congressional redistricting legislation this year, notwithstanding that a redistricting plan has already been implemented this decade; second, the declaration by the Lieutenant Governor that redistricting legislation would be considered in a special session without adhering to the so-called "2/3rd Rule." Plaintiffs allege that these two events constitute changes affecting voting within the meaning of the Act and, therefore, are legally unenforceable because preclearance has not been obtained. Defendants have filed a motion to dismiss, arguing that the Act does not apply to either of the challenged events. We agree.

■ The United States Supreme Court decision in *Presley v. Etowah County Commission, et at.,* 502 U.S. 491, 112 S.Ct. 820, 117 L.Ed.2d 51 (1992), controls this case. *Presley* makes clear that, while the reach of the Act is broad, it is nevertheless still "an extraordinary departure from the traditional course of relations between the States and the Federal Government," *id.* at 827, and that its reach is limited to procedures that have "a direct relation to voting and the election process." *id.* at 829. Thus, the Act is concerned with changes affecting procedures for casting ballots, candidacy requirements and qualifications, and composition of the electorate. *Id.* at 828. *Presley* distinguished between changes directly affecting voting by the electorate and "changes in the routine organization and functioning of government." *Id.* at 829. While the latter may indirectly affect voting, they are not within the scope of the Act.

■ We readily acknowledge, as did the Supreme Court, that "in a real sense every decision taken by government implicates voting," which is "but the felicitous consequence of democracy, in which power derives from the people." *Presley,* 112 S.Ct. at 829. Nevertheless, the Supreme Court insisted that a line must be drawn between events which directly affect the voters and events which, as here, affect the distribution of power between legislators of two different political parties. In the instant case, what will directly affect the voters of this State is a redistricting bill, not the mere consideration of such a bill or the process by which it comes to the floor of the Texas Senate. The Department of Justice has also concluded that the consideration by the Texas legislature of a redistricting bill without applying the "2/3rd Rule" is not a change affecting voting within the contemplation of the Act. This conclusion, while not binding upon us, is entitled to "considerable deference." *Id.* at 831.

■ It is undisputed that any new redistricting bill would have a direct relation to voting. Accordingly, it would have to be precleared under the Act and would thereafter be subject to judicial challenge. However, that time has not yet come.

The motion to dismiss claims under the Voting Rights Act is GRANTED. We also DISMISS claims under 42 U.S.C. § 1983, insofar as Plaintiffs claim that the State's decision to consider redistricting legislation and the failure to adhere to the "2/3rd Rule" violate the First, Fourteenth and Fifteenth Amendments to the United States Constitution.

We have promptly issued this brief opinion because of our understanding that another special session of the Texas legislature is imminent. We reserve the op-

portunity to issue a more detailed opinion hereafter, if appropriate. We also withhold ruling on Plaintiffs' motion to file a first amended complaint. The purpose of the amendment is to add a Count V, complaining of threats to arrest the Plaintiffs and also to require that they pay a monetary sanction for their failure to appear at earlier special sessions. As discussed at the hearing on September 11, 2003, the arrest issue likely will become moot. Indeed, the Plaintiffs' fear of being coerced to appear at a legislative session is shifting to a fear of being prevented from appearing. For reasons discussed at the hearing, neither the facts nor the law on the issue of threatened monetary sanctions are sufficiently developed at this point to permit an informed decision. Moreover, it is possible that future developments could also moot this issue.